STATE of Wisconsin, Plaintiff-Respondent,

v.

Cory S. HERRMANN, Defendant-Appellant.

Court of Appeals

*No. 2015AP53–CR. Submitted on briefs November 3, 2015.
—Decided November 24, 2015.*

2015 WI App 97

(Also reported in 873 N.W.2d 257.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Joseph N. Ehmann*, state public defender of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *Andrew J. Maier*,

assistant district attorney of Appleton; and *Jeffrey J. Kassel*, assistant attorney general, and *Brad D. Schimel*, attorney general.

Before Stark, P.J., Hruz and Seidl, JJ.

¶ 1. STARK, P.J.   Cory Herrmann appeals that portion of a judgment convicting him of possession of a switchblade knife, contrary to Wis. Stat. § 941.24(1).[1] Herrmann argues § 941.24(1) is unconstitutional, both facially and as applied to him, because it violates his right to bear arms, as guaranteed by the Second Amendment to the United States Constitution and article I, section 25 of the Wisconsin Constitution. We agree with Herrmann that § 941.24(1) is unconstitutional as applied to him. We therefore reverse that portion of the judgment convicting Herrmann of possession of a switchblade knife.

## BACKGROUND

¶ 2.   On September 2, 2012, Herrmann was injured in his home while showing his switchblade knife to a friend. Herrmann dropped the knife, and when he tried to catch it, it stabbed him in the "left groin" area, cutting his femoral artery. One of Herrmann's friends called 911, and officers responding to the scene seized the switchblade. Herrmann was charged with violat-

---

[1] Herrmann was also convicted of possession of drug paraphernalia, contrary to Wis. Stat. § 961.573(1). That conviction is not at issue for purposes of this appeal.

This case was assigned to be decided by one judge. *See* Wis. Stat. § 752.31(2)(f). On the court's own motion, it was converted to a three-judge panel by order of the chief judge of the court of appeals dated August 13, 2015. *See* Wis. Stat. Rule 809.41(3).

All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

ing Wis. Stat. § 941.24(1), which prohibits possession of "any knife having a blade which opens by pressing a button, spring or other device in the handle or by gravity or by a thrust or movement[.]"[2]

¶ 3.  Herrmann moved to dismiss the possession-of-a-switchblade charge. Relying on *District of Columbia v. Heller*, 554 U.S. 570 (2008), Herrmann argued Wis. Stat. § 941.24(1) was unconstitutional, both facially and as applied to him, because it violated his right to bear arms. In support of his motion, Herrmann asserted he had no prior criminal convictions, was not a gang member, did not use his switchblade for any offensive purpose, and possessed the switchblade in his own home for his protection.

¶ 4.  The circuit court issued a written decision and order denying Herrmann's motion to dismiss. Citing pre-*Heller* cases, the court stated it was Herrmann's burden to prove that Wis. Stat. § 941.24(1) was unconstitutional beyond a reasonable doubt, and the court would presume the statute was constitutional and resolve any doubt in favor of constitutionality. The court further stated it must "balance the conflicting rights of an individual to keep and bear arms for lawful purposes against the authority of the State to exercise its police power to protect the health, safety, and welfare of its citizens." Applying this test, the court ruled that, although Herrmann may have possessed the switchblade in his own home for self-defense,

> [t]his is not a sufficient reason to overcome the State's interest in protecting the health, safety, and welfare of its citizens from a dangerous weapon. Herrmann could

---

[2] The criminal complaint describes the knife seized from Herrmann's residence as a "spring-assisted folding knife with a 4–inch blade and a total length of 9 inches."

316

have easily used a non-prohibited weapon for his protection. The statutory ban on switchblade knives does not unreasonably impair Herrmann's right to keep and bear arms.

¶ 5. The case was then tried to the court. The parties stipulated to the facts set forth above pertaining to the circumstances of Herrmann's injury, *see supra,* ¶ 2, as well as the additional facts asserted in Herrmann's motion to dismiss, *see supra,* ¶ 3. The court found Herrmann guilty of violating Wis. Stat. § 941.24(1) and imposed a $100 fine, plus costs. Herrmann now appeals.

## DISCUSSION

¶ 6. The constitutionality of a statute presents a question of law that we review independently. *State v. Smith,* 2010 WI 16, ¶ 8, 323 Wis. 2d 377, 780 N.W.2d 90. A statute may be facially unconstitutional, meaning that it operates unconstitutionally under all circumstances. *Id.,* ¶ 10 n.9. Alternatively, a statute may be unconstitutional as applied, meaning that it operates unconstitutionally on the facts of a particular case or with respect to a particular party. *Id.* As noted above, Herrmann raises both facial and as-applied challenges to the constitutionality of Wis. Stat. § 941.24(1).

¶ 7. Specifically, Herrmann argues Wis. Stat. § 941.24(1) violates his right to bear arms, as guaranteed by both the United States and Wisconsin constitutions. The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be

317

infringed." Similarly, article I, section 25 of the Wisconsin Constitution states that "[t]he people have the right to keep and bear arms for security, defense, hunting, recreation or any other lawful purpose."[3]

¶ 8.   In *Heller*, the United States Supreme Court held that the Second Amendment protects an individual right to keep and bear arms for the purpose of self-defense. *Heller*, 554 U.S. at 592; *see also McDonald v. City of Chicago*, 561 U.S. 742, 749–50 (2010). Two years later, in *McDonald*, the Court held that this right was applicable to the States by virtue of the Fourteenth Amendment. *McDonald*, 561 U.S. at 750, 778.

¶ 9.   Subsequent cases applying *Heller* and *McDonald* have employed a two-step approach to Second Amendment challenges. First, a court must ask "whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010). If it does not, the inquiry is complete; if it does, the court must "evaluate the law under some form of means-end scrutiny." *Id.* In other words, the court must inquire into "the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights." *Ezell v. City*

---

[3] We have previously interpreted the United States and Wisconsin Constitutions as providing identical protection of the right to bear arms. *See State v. Pocian*, 2012 WI App 58, ¶ 7, 341 Wis. 2d 380, 814 N.W.2d 894. Moreover, Herrmann concedes that article I, section 25 of the Wisconsin Constitution does not "appear to provide greater protection or rights" than the Second Amendment. Accordingly, we do not distinguish between the federal and state constitutions for purposes of our analysis.

*of Chicago*, 651 F.3d 684, 703 (7th Cir. 2011). Here, the State does not dispute that Herrmann's possession of a switchblade falls within the scope of the Second Amendment. We agree. Accordingly, we proceed to the second step of the inquiry and examine the strength of the State's justification for restricting Herrmann's Second Amendment rights.

¶ 10. The parties dispute the level of scrutiny we should apply in this second step of our analysis. Traditionally, courts apply the rational basis standard, intermediate scrutiny, or strict scrutiny when analyzing constitutional challenges. *See, e.g., Heller*, 554 U.S. at 634. The *Heller* Court indicated that rational basis review is not appropriate in Second Amendment cases. *Id.* at 628 n.27. However, the Court did not specify what level of scrutiny *is* appropriate. *See United States v. Chester*, 628 F.3d 673, 676 (4th Cir. 2010). Herrmann contends strict scrutiny is warranted, while the State argues we should apply intermediate scrutiny. We need not resolve this dispute because, even under the more deferential standard of intermediate scrutiny, we conclude WIS. STAT. § 941.24(1) is unconstitutional as applied to Herrmann.[4]

¶ 11. "To pass constitutional muster under intermediate scrutiny, the government has the burden of demonstrating that its objective is an important one and that its objective is advanced by means substantially related to that objective." *United States v. Wil-*

---

[4] In addition, because we conclude the statute is unconstitutional as applied to Herrmann, we need not address Herrmann's facial challenge. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (appellate court should decide cases on the narrowest possible grounds).

*liams*, 616 F.3d 685, 692 (7th Cir. 2010). To meet this standard, the government must demonstrate "that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 664 (1994). Notably, a law challenged on Second Amendment grounds is not presumed constitutional, *see Ezell*, 651 F.3d at 706 (citing *Heller*, 554 U.S. at 628 n.27), and the burden is on the government to establish the law's constitutionality, *see Chester*, 628 F.3d at 683.

¶ 12.  Here, the State has failed to meet its burden to establish that WIS. STAT. § 941.24(1) is constitutional as applied to Herrmann.[5] The State argues WIS.

---

[5] Citing *Pocian*, the State argues we must presume WIS. STAT. § 941.24(1) is constitutional, and Herrmann has the burden to establish the statute is unconstitutional. *Pocian*, which was decided after *District of Columbia v. Heller*, 554 U.S. 570 (2008), addressed whether a Wisconsin statute prohibiting felons from possessing firearms violated the defendant's constitutional right to bear arms. *See Pocian*, 341 Wis. 2d 380, ¶ 2. As the State notes, the *Pocian* court began its analysis by stating that statutes are presumed constitutional and that a challenger bears the burden to establish unconstitutionality beyond a reasonable doubt. *Id.*, ¶ 6. These general standards are applicable when a law is reviewed using the rational basis test. *See, e.g., Milwaukee Branch of NAACP v. Walker*, 2014 WI 98, ¶ 22, 357 Wis. 2d 469, 851 N.W.2d 262. However, the *Pocian* court proceeded to apply intermediate scrutiny to the challenged statute and correctly stated that, under that standard, "*the government* must show that a law is substantially related to an important governmental interest." *Pocian*, 341 Wis. 2d 380, ¶ 14 (emphasis added). Thus, regardless of the standard of review it initially recited, the *Pocian* court ultimately applied the correct standard, placing the burden on the State to establish the challenged statute's constitutionality.

STAT. § 941.24(1) serves an important governmental objective—namely, protecting the public from the danger of potentially lethal surprise attacks posed by individuals using switchblade knives. However, the State cites no evidence to establish that this danger actually exists to any significant degree. Again, the State has the burden to establish that § 941.24(1) satisfies intermediate scrutiny, and it must do so by showing the existence of real, not merely conjectural, harm. *See Turner Broad. Sys.*, 512 U.S. at 664. Thus, on the record before us, we are not convinced that § 941.24(1) serves an important governmental objective.

¶ 13.  Moreover, as applied to Herrmann, WIS. STAT. § 941.24(1) is not substantially related to the State's cited objective of protecting the public from surprise attacks. It is undisputed that Herrmann possessed his switchblade in his own home for his protection. The threat to the public of a surprise attack by a person possessing a switchblade in his or her own residence for the purpose of self-defense is negligible. Consequently, while banning possession of switchblades in other settings might be substantially related to the State's cited objective of protecting the public from surprise attacks, prohibiting individuals from possessing switchblades in their own homes for their own protection is not.

¶ 14.  In addition, we observe that the State's total ban on the possession of switchblades significantly burdens Herrmann's right to bear arms. The United States Supreme Court made it clear in *Heller* that the right to bear arms in self-defense is "central to the Second Amendment right[,]" and "the need for defense of self, family, and property is most acute" in the home. *Heller*, 554 U.S. at 628. Similarly, the

321

Wisconsin Supreme Court has stated that "a citizen's desire to exercise the right to keep and bear arms for purposes of security is at its apex when undertaken to secure one's own home or privately owned business." *State v. Hamdan*, 2003 WI 113, ¶ 67, 264 Wis. 2d 433, 665 N.W.2d 785. Here, the effect of WIS. STAT. § 941.24(1) is to prohibit Herrmann from using an entire class of arms protected by the Second Amendment in his own home for his protection. This significantly restricts Herrmann's core Second Amendment right to bear arms in self-defense.

¶ 15.  A comparison of this case with *Heller* is instructive. *Heller* addressed the constitutionality of a District of Columbia law that banned handgun possession. *Heller*, 554 U.S. at 574–75. In striking down the law on Second Amendment grounds, the United States Supreme Court first held, as a threshold matter, that the Second Amendment protects an individual right to keep and bear arms for the purpose of self-defense. *Id.* at 592. The Court then held that the District of Columbia's complete ban on handgun possession, which extended to the home, was incompatible with the Second Amendment. *Id.* at 628–29. The Court explained:

> The handgun ban amounts to a prohibition of an entire class of "arms" that is overwhelmingly chosen by American society for [the] lawful purpose [of self-defense]. The prohibition extends, moreover, to the home . . . . Under any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the home "the most preferred firearm in the nation to 'keep' and use for protection of one's home and family," would fail constitutional muster.

*Id.* (citation and footnote omitted). The *Heller* Court acknowledged the public safety concerns posed by

handguns, but it nevertheless stated that the "enshrinement" of the Second Amendment right to bear arms "necessarily takes certain policy choices off the table[,]" including "the absolute prohibition of handguns held and used for self-defense in the home." *Id.* at 636.

¶ 16. Like the law at issue in *Heller*, WIS. STAT. § 941.24(1) imposes an absolute prohibition on an entire class of arms protected by the Second Amendment, even when kept or carried in the home for self-defense. And, as Herrmann argues convincingly, handguns pose a greater threat to public safety than the knives banned by § 941.24(1). In 2013, firearms were used in 68.9% of all murders reported to the FBI's Uniform Crime Reporting Program, and handguns, specifically, in 47.2%.[6] In contrast, knives and cutting instruments were used in only 12.2% of murders. The FBI's data also shows that firearms are used in significantly more robberies than knives.[7] In addition, one study has found that firearm injuries are 5.5 times more likely to result in death than knife wounds. *See* David B. Kopel, Clayton E. Cramer & Joseph Edward Olsen, *Knives and the Second Amendment,* 47 U. MICH. J.L. REFORM 167, 183 (Fall 2013). Under the rationale of *Heller*, if a complete prohibition of handgun posses-

---

[6] *See Crime in the United States 2013, Expanded Homicide Data Table 11,* https://www.fbi.gov/about-us/cjis/ucr/crime-in-the-u.s/2013/crime-in-the-u.s.-2013/offenses-known-to-law-enforcement/expanded-homicide/expanded_homicide_data_table_11_murder_circumstances_by_weapon_2013.xls (last visited November 5, 2015).

[7] *See Crime in the United States 2013, Table 19,* https://www.fbi.gov/about-us/cjis/ucr/crime-in-the-u.s/2013/crime-in-the-u.s.-2013/tables/table-19/table_19_rate_additional_information_about_selected_offenses_by_population_group_2013.xls (last visited November 5, 2015).

sion in the home for self-defense is unconstitutional, despite demonstrable public safety concerns, it follows that a complete prohibition of a less dangerous category of arms in the home for self-defense is also unconstitutional.[8]

¶ 17. The State relies primarily on *State v. Murillo*, 347 P.3d 284 (N.M. Ct. App. 2015), in support of its argument that WIS. STAT. § 941.24(1) is constitutional. There, the New Mexico Court of Appeals rejected a Second Amendment challenge to a state statute prohibiting possession of switchblade knives. *Murillo*, 347 P.3d at 286. Applying intermediate scrutiny, the *Murillo* court concluded the ban was substantially related to an important governmental interest—protecting the public from the danger of potentially lethal surprise attacks. *Id.* at 289. However, *Murillo* is factually distinguishable because, unlike Herrmann, the defendant in *Murillo* did not possess a switchblade in his own home for his protection. Instead, he was convicted of possessing a switchblade after using it in a fight at a Wal-Mart. *Id.* at 286. Accordingly, *Murillo* did not implicate the core Second Amendment right to keep and bear arms in one's own home for self-defense. For this reason, as well as the reasons discussed above

---

[8] The Michigan Court of Appeals employed similar reasoning in *People v. Yanna*, 824 N.W.2d 241 (Mich. Ct. App. 2012), which struck down as unconstitutional a Michigan statute prohibiting the possession of Tasers and stun guns. The *Yanna* court first concluded Tasers and stun guns are protected by the Second Amendment, noting they are "substantially less dangerous than handguns." *Id.* at 245–46. The court then reasoned, "*Heller* held unconstitutional a law that completely banned the possession of protected arms in the home. We therefore hold that a complete ban on Tasers and stun guns in the home violates the Second Amendment." *Yanna*, 824 N.W.2d at 245–46 (citation omitted).

in paragraphs 12 and 13, the State's reliance on *Murillo* does not persuade us that § 941.24(1) is constitutional as applied to Herrmann.

¶ 18. The *Murillo* court also asserted the statute at issue in that case was not an impermissible categorical ban on a class of weapons protected by the Second Amendment because "[w]hile the statute might be characterized as prohibiting an entire class of arms (switchblades), it might equally be characterized as a ban on a mere subset [switchblades] of a type of arms (knives) that is itself peripheral to self-defense or home security." *Id.* at 290. We find this distinction unpersuasive. The handgun ban struck down in *Heller* might also have been characterized as a ban on a mere subset (handguns) of a type of arms (guns), rather than a ban on an entire class of arms (handguns). Moreover, we are not persuaded by the *Murillo* court's bald assertion that knives are "peripheral to self-defense or home security." *Murillo*, 347 P.3d at 290. Whether knives are typically used for self-defense or home security as a general matter is beside the point. In this case, it is undisputed that Herrmann possessed his switchblade inside his home for his protection. The Second Amendment, as interpreted in *Heller*, protects Herrmann's right to do so.[9]

---

[9] Although the *Heller* Court emphasized that handguns are frequently used for self-defense, we do not think *Heller* can be read to create different levels of protection for different types of arms that fall under the Second Amendment, based on their popularity. In addition, it is not particularly surprising that handguns are more prevalent than switchblades, given that switchblades were banned or severely restricted in many states, including Wisconsin, beginning in the late 1950s and early 1960s. *See* Paul A. Clark, *Criminal Use of Switchblades: Will the Recent Trend Towards Legalization Lead to Bloodshed?* 13 Conn. Pub. Int. L.J. 219, 219 (2014).

¶ 19. We also observe that the defendant in *Murillo* did not raise his Second Amendment challenge in the trial court and therefore deprived the State of the opportunity to make an evidentiary showing that the challenged statute withstood intermediate scrutiny. *Id.* at 286, 289 n.2. The *Murillo* court nevertheless chose to address the defendant's argument, reasoning, "Other cases have addressed the issue, and, rather than remanding this case to the district court, we can address Defendant's arguments based on case law." *Id.* at 289 n.2. Thus, although the *Murillo* court purported to apply intermediate scrutiny, it did not actually hold the government to its burden of proof, choosing instead to rely on unsupported statements from pre-*Heller* case law about the dangerousness of switchblades and their frequent use by criminals. *See id.* at 288–89. Unlike the *Murillo* court, we do not find these unsupported statements persuasive.

¶ 20. In addition to relying on *Murillo*, the State argues WIS. STAT. § 941.24(1) "would be unconstitutional as applied to Herrmann only if he had no realistic alternative means to exercise his right to possess and carry a knife for defense." In other words, the State contends the statutory ban on switchblades is permissible because Herrmann could have instead used a fixed blade knife or some other kind of weapon to protect himself in his home. The State cites *Hamdan* in support of this argument.

¶ 21. In *Hamdan*, our supreme court held that a Wisconsin statute prohibiting the carrying of concealed weapons was unconstitutional under article I, section 25 of the Wisconsin Constitution as applied to a storeowner who carried a concealed pistol in his store. *See Hamdan*, 264 Wis. 2d 433, ¶¶ 1–7. In so doing, the court weighed the public interest in enforc-

326

ing the statute against the storeowner's right to keep and bear arms by carrying a concealed weapon inside his privately owned business. *Id.*, ¶¶ 67–68. The court also stated that, under intermediate scrutiny, "the test for whether statutes or ordinances that restrict a fundamental right are constitutional is whether they leave 'open ample alternative channels by which the citizen may exercise' the affected right." *Id.*, ¶ 70 (quoting *Brandmiller v. Arreola*, 199 Wis. 2d 528, 541, 544 N.W.2d 894 (1996)). The court concluded that, where the State's interest in restricting the right to bear arms is minimal and the private interest in exercising the right is substantial, regulations limiting the right "must leave *some* realistic alternative means to exercise the right." *Id.*, ¶ 71.

¶ 22.  *Hamdan*, however, predates *Heller*. In *Heller*, the Supreme Court specifically rejected an argument that the District of Columbia's handgun ban was permissible because residents were allowed to possess other types of firearms, stating:

> It is no answer to say, as petitioners do, that it is permissible to ban the possession of handguns so long as the possession of other firearms (i.e., long guns) is allowed. It is enough to note, as we have observed, that the American people have considered the handgun to be the quintessential self-defense weapon. There are many reasons that a citizen may prefer a handgun for home defense:   It is easier to store in a location that is readily accessible in an emergency; it cannot easily be redirected or wrestled away by an attacker; it is easier to use for those without the upper-body strength to lift and aim a long gun; it can be pointed at a burglar with one hand while the other hand dials the police. Whatever the reason, handguns are the most popular

weapon chosen by Americans for self-defense in the home, and a complete prohibition of their use is invalid.

*Heller*, 554 U.S. at 629. Similarly, in this case, it is no answer to say that Herrmann could have possessed a different weapon. As Herrmann points out, there are multiple reasons a person might prefer to carry a switchblade rather than a gun or fixed blade knife:

> An automatic knife is safer than a gun or a fixed blade knife and can be just as effective. For safety reasons people with children may not want guns around the house. People with limited financial resources who may not be able to afford a proper gun likely would be able to afford an effective $10 automatic knife. Finally, for people who are excluded from lawful gun ownership, an automatic knife may be the most effective arm available.

The State does not address these reasons, and has therefore, failed, to the extent necessary after *Heller*, to show that Herrmann had reasonable alternative means to exercise his Second Amendment right to bear arms in his own home for self-defense.

¶ 23. For the foregoing reasons, we conclude WIS. STAT. § 941.24(1) is unconstitutional as applied to Herrmann. We therefore reverse that portion of the judgment convicting Herrmann of possession of a switchblade.

*By the Court.*—Judgment reversed in part.